NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**VINH PHAN,**
*Petitioner*

**v.**

**DEPARTMENT OF HEALTH AND HUMAN SERVICES,**
*Respondent*

---

2022-1749

---

Petition for review of the Merit Systems Protection Board in No. DE-1221-21-0252-W-1.

---

Decided:  November 1, 2023

---

VINH PHAN, Shawnee, KS, pro se.

LAURA OFFENBACHER ARADI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by REGINALD THOMAS BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY.

---

Before NEWMAN, LOURIE, and PROST, *Circuit Judges*.

Opinion for the court filed PER CURIAM.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

PER CURIAM.

Vinh Phan appeals from a decision of the Merit Systems Protection Board ("Board") denying a request for relief in an Individual Right of Action appeal that asserted retaliatory agency action for alleged whistleblowing activity. *Phan v. Dep't of Health & Hum. Servs.*, 2022 WL 509255 (M.S.P.B. Feb. 14, 2022) ("*Decision*"), R.A. 6–33.[1]

For the following reasons, we *affirm in part* and *vacate and remand in part*.

## BACKGROUND

In 2003, Phan began working as a chemist in the Kansas City District Laboratory ("KCL") of the Food and Drug Administration ("FDA"), a division of the Department of Health and Human Services. R.A. 45. Over the years, Phan rose to a GS-1320-12 Step 8 position. *Id.* In March 2020, Phan applied for a promotion to a GS-13 Team Lead position after learning that four such positions had become available. *Id.* In July 2020, KCL announced the four individuals to be promoted. *Id.* Phan was not one of them. *Id.*

In a complaint to the Office of Special Counsel ("OSC"), Phan asserted that KCL retaliated against him for whistleblowing activity in violation of 5 U.S.C. § 2302(b)(8). R.A. 45, 49–52. The complaint alleges whistleblowing activity relating to a letter, sent by another chemist at KCL, Linwood Daughtry II, to a U.S. Senator. *Id.* at 45–46. The half-page letter listed "concerns of [Daughtry] as well as coworkers that have yet to be addressed by upper management." *Id.* at 43. In particular, it listed:

---

[1]    "R.A." refers to the appendix filed with Respondent's brief.

- Agency's Diversity and EEO Policy violation
- Hiring and Promotion of Qualified Personnel
- Awards and Performance Management Appraisal Program
- Mismanagement of taxpayer's monies

R.A. 43. The letter included no further details on those four areas of alleged concern. Phan and six other coworkers co-signed Daughtry's letter, *id.* at 43–44, which was eventually forwarded to various supervisors at KCL as well as upper management at the FDA.

The FDA began an investigation into KCL employment practices in 2019 following the letter. As part of that investigation, Phan alleges the signatories of the letter met face-to-face with FDA investigators on March 7, 2019. Appellant's Br. at 3; *see* P.A. 42–44.[2] Phan sent an email on March 8, 2019, to FDA investigators and the FDA Associate Commissioner of Regulatory Affairs. P.A. 46–47. On July 17, 2019, Phan provided an affidavit. P.A. 49–54.

In his complaint to OSC, Phan asserted that the "only explanation for [his] non-selection [for the Team Lead position] is that the interviewers colluded to downgrade [his] interviewing score and ranking . . . [to] eliminate [him] from selection in retaliation for whistle blowing activities." R.A. 51. In addition to being denied the Team Lead promotion, Phan alleged further retaliation in the form of a proposal by KCL management to transfer him to a new research group, as well as a denial of a Quality Step Increase. *Id.* at 47–49. Notably, Phan was never transferred, as he asked not to be, and that preference to not be transferred was honored. *Decision* at 13 (noting that Phan's supervisor purportedly offered Phan the opportunity to switch research groups because the supervisor believed

---

[2]    "P.A." refers to the appendix filed with Petitioner's brief.

that Phan "was the most capable person under [his] supervision"). Similarly, although Phan did not receive a Quality Step Increase, he was awarded a cash bonus and time-off award in exchange for an outstanding work performance. *Id.* at 14.

Phan then filed an Individual Right of Action appeal under the Whistleblower Protection Act as amended by the Whistleblower Protection Enhancement Act. *Decision* at 1–2. In her initial decision, the administrative judge, without a hearing, found that Phan did not meet his burden of showing that he made protected disclosures or engaged in protected activity. *Id.* at 17–19. That decision became the Board's final decision on March 21, 2022. *Id.* at 20; *see* 5 C.F.R. § 1201.113. Phan appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Phan contends that the Board erred in holding that he failed to establish that he engaged in a protected disclosure under 5 U.S.C. § 2302(b)(8) by co-signing Daughtry's letter. The Board concluded, and we agree, that the letter did not constitute a protected disclosure because it only stated general concerns rather than substantive details. "A party cannot establish jurisdiction through general assertions, but must provide substantive details." *Young v. Merit Sys. Prot. Bd.*, 961 F.3d 1323, 1328 (Fed. Cir. 2020); *Johnston v. Merit Sys. Prot. Bd.*, 518 F.3d 905, 910 (Fed. Cir. 2008) ("[V]ague, conclusory[,] or facially insufficient allegations of government wrongdoing . . . fail to provide an adequate jurisdictional predicate under the [Whistleblower Protection Act].").

Phan next contends that the Board "failed to take into account the fact that signatories discussed the bullet points of the letter (and more) in detail in a face-to-face meeting with" FDA investigators. Appellant's Br. at 3. He further contends that an email sent to two FDA investigators as well as the FDA Associate Commissioner of Regulatory

Affairs was a "detail[ed] disclosure." *Id.* And he makes the same assertion regarding an affidavit he submitted during that internal investigation. *Id.*

The Board analyzed Phan's participation in the FDA's investigation under 5 U.S.C. § 2302(b)(9). Protected activity under § 2302(b)(9) includes:

> (A) the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation—
>
>> (i) with regard to remedying a violation of paragraph (8); or
>>
>> (ii) other than with regard to remedying a violation of paragraph (8);
>
> (B) testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in subparagraph (A)(i) or (ii);
>
> (C) cooperating with or disclosing information to the Inspector General (*or any other component responsible for internal investigation or review*) of an agency, or the Special Counsel, in accordance with applicable provisions of law; or
>
> (D) refusing to obey an order that would require the individual to violate a law, rule, or regulation[.]

5 U.S.C. § 2302(b)(9) (emphasis added).

A previous version of § 2302(b)(9)(C) defined its protected activity only as "cooperating with or disclosing information to the Inspector General of an agency, or the Special Counsel, in accordance with applicable provisions of law." 5 U.S.C. § 2302(b)(9)(C) (2016). In 2017, however, Congress added the "or any other component responsible for internal investigation or review" parenthetical (emphasized above) in the National Defense Authorization Act for Fiscal Year 2018 ("NDAA"), Pub. L. No. 115-91, sec. 1097(c)(1)(A), 131 Stat. 1283, 1618.

The Board's description of § 2302(b)(9) closely tracked the language of the statute, but it omitted the "or any other component responsible for internal investigation or review" parenthetical in subsection (b)(9)(C) added in the NDAA. *Decision* at 8–9. The government's appellate brief likewise omits the parenthetical in subsection (b)(9)(C) when setting forth the provisions of § 2302(b)(9). Appellee's Br. at 16. Because it appears that both the Board and the government may have miscited the statute or otherwise overlooked this parenthetical, and because, on its face, this parenthetical could apply in this case, we think a remand is appropriate for the Board to consider what (if any) impact this portion of the statute has on Phan's case.

In this appeal, the government's primary argument concerning Phan's investigation-related activity is that he failed to exhaust his remedies under 5 U.S.C. § 1214(a)(3)—i.e., he failed to seek relief for this activity from the OSC before he sought corrective action for it from the Board. Appellee's Br. at 13, 16. The Board, in addressing this activity under § 2302(b)(9), does not appear to have considered the exhaustion requirement.[3] And we cannot discern whether the government raised this particular exhaustion issue before the Board. On remand, the Board should consider whether to address this exhaustion issue and, if the answer is yes, should decide it.

---

[3] The administrative judge stated at one point that "[t]here is no dispute, and I find, that the appellant exhausted the corrective action process with the OSC." *Decision* at 5. Later, however, the administrative judge stated: "The appellant exhausted one disclosure with OSC: that in late October 2018, he was a signatory on a joint letter sent to a Senator and agency management." *Decision* at 17. The administrative judge made the latter statement in discussing § 2302(b)(8), then addressed the investigation-related activity under § 2302(b)(9) without mentioning exhaustion.

CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm in part* and *vacate and remand in part.*

**AFFIRMED IN PART, VACATED AND REMANDED IN PART**

COSTS

No costs.

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**VINH PHAN,**
*Petitioner*

**v.**

**DEPARTMENT OF HEALTH AND HUMAN SERVICES,**
*Respondent*

---

2022-1749

---

Petition for review of the Merit Systems Protection Board in No. DE-1221-21-0252-W-1.

---

NEWMAN, *Circuit Judge,* dissenting.

On this appeal from the Merit Systems Protection Board[1] (MSPB or "Board") the Board did not decide the only issue that was appealed to it (the issue of retaliation), but instead decided a subject that was not disputed by either party (whether there was a whistleblowing disclosure).  The panel majority accepts this flawed procedure.  I

---

[1]   *Phan v. Dep't of Health & Human Servs.*, 2022 WL 509255 (M.S.P.B. Feb. 14, 2022) ("Board Op.").

respectfully dissent, for sound administrative practice requires that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Securities & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943). The action before the agency and the Office of Special Counsel was based solely on Mr. Phan's assertion of retaliation.

In addition, the Board applied incorrect law in reaching its decision. The government does not defend the Board's substantive and procedural errors and relies solely on its challenge to the MSPB's jurisdiction. Although the panel majority recognizes that the Board's disposition is flawed, these errors of law and procedure must also be corrected. More is required of appellate review, than a general remand to check a parenthetical.

A

### *The only issue before the agency and the OSC was retaliation*

The MSPB disposed of the appeal by deciding that Mr. Phan was not a whistleblower. That Mr. Phan made protected disclosures was not disputed by any party and not challenged before the Board. However, the Board held that "it is unnecessary to address contributing factor or whether the agency would have taken the same actions anyway," Board Op. at 19, and held that Mr. Phan was not a whistleblower.

Administrative practice requires that disputed issues are presented to the agency. *See Delta Air Lines, Inc. v. Exp.–Imp. Bank of the U.S.*, 85 F. Supp. 3d 387 (D.D.C. 2015):

> [A] fundamental rule of administrative law is that a court reviewing an agency's decision must judge the propriety of the agency action solely by the grounds invoked by the agency. Typically, the grounds reviewed will appear in the administrative

> record, and judicial review therefore is to be based on the full administrative record that was before the agency at the time it made its decision.

*Id.* at 402 (citations, alterations, and quotation marks omitted).

The proceedings at the agency and the Office of Special Counsel (OSC) were on the premise that Mr. Phan was a whistleblower. Mr. Phan argued only retaliation during the FDA investigation and, as the Board stated, "On October 21, 2019, the Office of Human Capital Management notified El-Demerdash that it has closed out its investigation and found that the allegations were unsubstantiated." Board Op. at 12–13. However, instead of resolving the question of retaliation, the Board held that Mr. Phan was not a whistleblower based on the absence of details in the initial letter to FDA management and a Senator ("the 2018 Letter") finding that it did not contain details of the alleged "fraud, waste, and abuse." My colleagues ignore these errors of law and procedure.

B

### *The evidence related to retaliation was developed in the agency record*

At the OSC, the government did not suggest that Mr. Phan had not engaged in whistleblowing activity. The OSC proceeding and closure letter were premised on agency acceptance that such activity had occurred.

In contrast with the silence of the record on the question of whistleblowing, the record was well developed with respect to the question of retaliation. The government provided evidence and argument to support its position that the same actions would have been taken if Mr. Phan had not made protected disclosures. *See Keys v. Dep't of Hous. & Urb. Dev.*, 2022 WL 703891, at *3 (Fed. Cir. 2022) ("If [the claimant] made those showings, the agency nevertheless could prevail in the IRA appeal by showing, by clear

and convincing evidence, that it would have reassigned [the claimant] even in the absence of the protected disclosure.").

Mr. Phan focused on three employment actions that he argued were retaliatory:

1.  **The proposed transfer to the metals group**

    This occurred in the spring of 2019, when Mr. Adams, Mr. Phan's first-line supervisor (who had seen the 2018 Letter), suggested to Mr. Phan that he transfer from the pesticides group to the metals group. Mr. Phan states that the proposed transfer would have been disadvantageous to his career and was retaliatory. Mr. Adams stated that the metals group needed analysts and he believed Mr. Phan "was the most capable person under my supervision." Board Op. at 13. Mr. Phan declined to move to the metals group. He argued to the Board, and repeats on this appeal, that the proposed transfer was retaliatory for his whistleblowing.

2.  **Non-selection for a Team Lead Promotion**

    Mr. Phan and eleven other KCL employees applied for a promotion to one of four Team Lead positions. Mr. Phan was ranked 6th and thus not selected, although he did receive a cash award and time off. He states that "[f]inal QSI selection was based on the ranking that El-Demerdash, Cooper and Rice prepared," all of whom had seen the 2018 Letter. Phan Br. Continuation P.7. Mr. Phan stated that "[m]y technical competency has been consistently rated 'Exceptional' by my former pesticides supervisor . . . and current pesticides supervisor," and that the persons selected had inferior qualifications or less experience. Phan OSC Compl. 5–6 (HHSAppx49–50). Mr. Phan argues that his

whistleblowing was a contributing factor in his non-selection. Board Op. at 14–15.

### 3. Denial of a Quality Step Increase

While Mr. Phan's supervisor suggested that he be transferred during a department reorganization because he "was the most capable person under [his] supervision," he was not given a Quality Step Increase in his annual performance evaluation. Board Op. at 13. On this appeal, Mr. Phan again argues that his whistleblowing was a contributing factor to this omission.

Upon the occurrence of the various personnel actions, Mr. Phan filed a complaint with the OSC in conformity with 5 U.S.C. § 1214(a)(1)(A). *Id.* ("The Special Counsel shall receive any allegation of a prohibited personnel practice and shall investigate the allegation to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken."). The Board summarized the OSC complaint:

[T]he appellant complained to OSC that the agency retaliated against him based on the disclosures in the joint letter with respect to the following: (1) proposing to transfer him to another group; (2) denying him a Quality Step Increase; and (3) not selecting him for a promotion to a GS-13 Team Lead position.

Board Op. at 2. The OSC closed Mr. Phan's complaint on August 28, 2020. *Id.* at 5.

Mr. Phan then appealed to the Board, as provided by 5 U.S.C. § 1221 (Individual Right of Action in Certain Reprisal Cases). The Board summarized the evidence and argument concerning retaliation, but held that it need not decide retaliation because Mr. Phan was not a whistleblower. The Board stated that the four bullet-points in the

2018 Letter (*see infra*) were insufficiently detailed to constitute whistleblowing, and that Mr. Phan's disclosures during the ensuing FDA investigation could not be considered. On this reasoning, the Board held that "the appellant did not meet his burden of showing that he made protected disclosures or engaged in protected activity, so I do not evaluate contributing factor or the agency's reasons for its actions." Board Op. at 4.

The Board's erroneous view of protected disclosures should be corrected, lest it add confusion to this body of law. The Board's ruling, that only the initial disclosure in the 2018 Letter can be considered, is not the law. The ensuing disclosures to the FDA's investigators can and must be considered along with the initial disclosure. My colleagues err in remaining silent on this significant Board error.

The Whistleblower Protection Act (WPA) in 5 U.S.C. § 2302 states the basic whistleblower protections:

> § 2302 Prohibited personnel practices. [Any employee shall not] take or fail to take . . . a personnel action with respect to any employee or applicant for employment because of—
>
> * * *
>
> (b)(8)(A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—
>
>> (i) any violation of any law, rule, or regulation, or
>>
>> (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety,
>
> if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the

interest of national defense or the conduct of foreign affairs;

(B) any disclosure to the Special Counsel, or to the Inspector General of an agency or another employee designated by the head of the agency to receive such disclosures, of information which the employee or applicant reasonably believes evidences—

> (i) any violation (other than a violation of this section) of any law, rule, or regulation, or

> (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety; or

(C) any disclosure to Congress . . . of information described in subparagraph (B) that is—

> (i) not classified; or

> (ii) if classified—

* * *

The Whistleblower Protection Enhancement Act (WPEA) enacted in 2012, and as amended in 2017, states protection for:

(A) the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation—

> (i) with regard to remedying a violation of paragraph (8); or

> (ii) other than with regard to remedying a violation of paragraph (8);

(B) testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in subparagraph (A)(i) or (ii);

> (C) cooperating with or disclosing information to the Inspector General (or any other component responsible for internal investigation or review) of an agency, or the Special Counsel, in accordance with applicable provisions of law; or

> * * *

5 U.S.C. § 2302(b)(9)(A). The panel majority holds that the Board's omission of the parenthetical in clause (C) above warrants remand, Maj. Op. at 6, although we are not informed of the relevance of this parenthetical to either Mr. Phan's whistleblowing or his assertions of retaliation.

## C

### *There is no issue that Mr. Phan is a whistleblower*

Mr. Phan was one of several signatories to the 2018 Letter, which requested "answers to . . . concerns of mine as well as coworkers that have yet to be addressed by upper management. I am writing to your office to get a resolution for these issues." PhanAppx33. The 2018 Letter listed four areas of concern, in bullet-point format:

- Agency's diversity and EEO policy violation
- Hiring and promotion of qualified personnel
- Awards and performance management appraisal program
- Mismanagement of taxpayer's monies.

Board Op. at 10. The MSPB observed: "The letter did not provide any additional information about the bullet-point concerns but provided contact information for the signatories." *Id*. However, it is not disputed that the information was sufficient to launch an investigation by FDA management, during which additional support for the allegations was provided. Mr. Phan met with Glenda Barfell, Director of the Office of Management, and her colleague Sean Linder, investigators sent to KCL from FDA headquarters.

The Board recognized that the "appellant sent additional materials to Barfell and Linder to explain his concerns." *Id*.

The record contains correspondence between Mr. Phan and the investigators; an email from Mr. Phan states: "Thank you for spending time to listen to our concerns/issues," and adds details "to present another evident [*sic*] to show KCL's continuing deceptive and manipulative hiring practices and loopholes in our HR." PhanAppx46–47. The Board summarized an affidavit Mr. Phan submitted to the investigators, as follows:

> In his affidavit, the appellant complained that El-Demerdash retaliated against him for his "multiple complaints with upper FDA management, Office of Special Counsel, Merit Systems Protection Board, Department of Labor, joined letters to several members of Congress and EEO for equal opportunity (racial, veteran's preference, etc.), biased promotion and hiring practices, prohibited personnel practices, favoritism, inefficient use of government's resources (equipment and manpower), whistleblower retaliation." He further complained about favoritism, "obscured hiring and promotion practices," and a hostile work environment.

Board Op. at 12–13 (citations omitted).

Despite recognizing these disclosures, the Board held that they cannot be considered as providing details of whistleblowing. The Board held that only Mr. Phan's general disclosures in the 2018 Letter can be considered; the Board stated that this is required by *Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, 440–44 (2016). However, *Graves* did not hold that subsequent disclosures to investigators are not protected disclosures. In *Graves* the MSPB held that an employee's participation in an internal agency-initiated investigation of potential research misconduct was not an act of whistleblowing because such activity is not within the classes described in 5 U.S.C.

§ 2302(b)(9)(A)(i), (B), (C), or (D).  *See* 123 M.S.P.R. at 443 ("There is no indication in the record or in VA Directive 0700 suggesting that an administrative investigation constitutes an initial step by an employee.").  *Graves* does not require that information provided during follow-up investigation of an initial disclosure must be ignored in determining whether the employee made a protected disclosure.

The Board also held that since the FDA's investigation of Mr. Phan's disclosures was done "voluntarily," Mr. Phan's disclosures to the investigators do not count as protected whistleblowing.  Board Op. at 19.  There is no authority in the rules of evidence or in the whistleblower statutes to hold that disclosures to investigators during "voluntary" inquiries cannot be included as protected disclosures.

As recited in *Chenery*, "[a]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *Chenery*, 318 U.S. at 95.  This is a rule of the administrative state; there is no exception for whistleblower actions.  It was not disputed, by the FDA or the OSC, that Mr. Phan was a whistleblower; the only issue before the Board was retaliation.  My colleagues, by their silence, appear to endorse these procedural and substantive errors.

## CONCLUSION

The Board did not decide the only question on appeal, that of retaliation.  My colleagues do not correct the Board's errors of procedural and substantive law.  I respectfully dissent.